No. 22921.

JAMES PHILLIPS *v.* THE PEOPLE OF THE STATE OF COLORADO.
(462 P.2d 594)

Decided December 29, 1969.

EDWARD H. SHERMAN, Public Defender in and for the City and County of Denver, WILLIAM CHISHOLM, Public Defender in and for the City and County of Denver, TRUMAN E. COLES, Deputy, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, JOHN P. MOORE, Deputy, AUREL M. KELLY, Special Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE PRINGLE delivered the opinion of the Court.

JAMES PHILLIPS (hereinafter referred to as defendant) was found guilty of aggravated robbery and sentenced to from seven to ten years in the state penitentiary. He brings writ of error here alleging principally that it was error for the trial judge (1) to admit into evidence certain articles of clothing seized from his hotel room as the result of an allegedly unlawful search; (2) to admit into evidence testimony by the victim identifying the defendant when that identification was based on an allegedly improper out-of-court identification; (3) to admit into evidence certain portions of an extrajudicial statement from the defendant made in response to police interrogation and allegedly in violation of the defendant's constitutional rights; (4) to deny the defendant's motion for acquittal at the close of the case for the People; (5) to omit an instruction on simple robbery; and (6) to answer only indirectly an interrogatory submitted to the court by the jury after deliberation had begun. We do not agree with the contentions of the defendant, and we affirm the judgment of the trial court.

I.

The defendant contends that a search of his hotel room

was illegal because the consent which he gave to police officers to conduct the search was given involuntarily and without knowledge of his rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and Art. II, §7 of the Colorado constitution.

The defendant raised this contention in a motion to suppress evidence before the trial. He was given a full hearing on the motion, and at the close of the hearing the district court judge made findings of fact and conclusions of law in which he found that the consent of the defendant was voluntarily given with knowledge of the constitutional right involved.

The Fourth Amendment to the United States Constitution and Art. II, §7 of the Colorado constitution provide that a person shall be secure in his home from unreasonable searches and seizures. While these provisions generally protect a person from searches conducted by officers of the state without search warrants, this court has held that a search conducted without a warrant but with the voluntary consent of the person whose home is searched is reasonable and not in violation of the state or federal constitutions. *Capps v. People,* 162 Colo. 323, 426 P.2d 189. Voluntary means that the consent is intelligently and freely given. Whether or not the consent which is given in a particular case is voluntary is a question to be determined from the totality of the circumstances in each case. *Capps v. People, supra.*

The record of the hearing on the defendant's motion to suppress evidence adequately supports the finding of the judge that the consent to search was voluntarily given by the defendant.

At the time the defendant gave his consent, he had been arrested and was in police custory. At the hearing, the defendant testified that the arresting officer informed him of his right to remain silent, and the People introduced an advisement form admittedly read and signed by the defendant at the time of his arrest which advised him of his right to counsel. Two days after his arrest

the defendant was interrogated by police officers. At that time the defendant testified that he signed a paper which he understood to be a consent to the search of his home. This paper was produced by the People. He further testified that no threats or coercion were used by the officers in obtaining his signature and consent.

The police officer who obtained the consent to search from the defendant testified that the defendant was informed before he gave his consent that he did not have to make any statement; that he had a right to an attorney before making any statement; that any statement he made could be used against him; and that he did not have to consent to a search of his premises.

In some respects the evidence and testimony was in conflict. The defendant testified that the officers stated that they were only looking for a weapon and that the clothing subsequently seized by the officers was in the closet of his room. The officers disclaimed having given any specific description of the items for which the search was to be conducted and asserted that the seized clothing was found on the bed and chair in the hotel room.

The testimony by the officers, as it appears in the record, if believed, together with the forms admittedly signed by the defendant, support the findings and conclusion of the trial judge that the consent given by the defendant was voluntary.

The defendant argues that the consent was not voluntary because it was not intelligently made. He points out that there is no testimony in the record that the defendant was ever told that the evidence obtained as a result of the search could be used against him at trial.

■■ The only requirement of intelligent consent is that the person giving the consent know that he may properly refuse to give his permission to a search conducted without a warrant. *United States v. Vickers*, 387 F.2d 703. In the present case, there was testimony from the interrogating officer that the defendant was informed that he did not have to consent to a warrantless

search of his premises. Such a warning is sufficient to apprise the defendant of his right under the Fourth Amendment and Art. II, §7.

In addition, the circumstances of this case indicate that the defendant was fully aware that the police were his adversaries and that evidence seized by them could be used against him at trial. The district court judge heard evidence of three prior felony convictions of the defendant. It was established that on two separate occasions the defendant was advised that statements made by him could be used against him at trial. Under the circumstances the district judge was justified in finding that the defendant was aware of his rights at the time he gave his consent to the search.

The defendant further argues that he was not adequately advised of his rights under the Fifth Amendment prior to the giving of his consent, and that there is no proof of a knowing and intelligent waiver of those rights. In so doing, he relies upon the case of *State v. Williams*, 248 Or. 85, 432 P.2d 679 in which the Oregon Supreme Court found that a consent to search given by a defendant as the result of police interrogation was testimony given by that defendant against himself and as such was covered by the United States Supreme Court decision in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. We do not agree with the reasoning of the Oregon court, and we conclude that *Miranda v. Arizona, supra* has no application to the area of Fourth Amendment searches and seizures.

The ruling of the United States Supreme Court in *Miranda v. Arizona, supra* was designed as a prophylactic rule to correct and prevent abusive police practices in the area of confessions. The Supreme Court has not acted to extend the rule in *Miranda* to the Fourth Amendment. In the absence of such an extension of the rule in *Miranda* by the Supreme Court, this court shall continue to adhere to the rule that in order for a search with consent to be reasonable the consent must be volun-

tary, and that the question of whether the consent was freely and intelligently given is to be determined according to the circumstances in each case.

## II.

The defendant argues that it was error for the trial judge to permit the complaining witness to make an identification of the defendant based on a confrontation between the witness and the defendant at Denver General Hospital. No counsel was present at the hospital to represent the defendant during the confrontation, and there was no evidence that defendant affirmatively waived his right to counsel. Defendant alleges that any in-court identification of the defendant tainted by the improper confrontation should have been suppressed under the exclusionary rule set down by the United States Supreme Court in *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149.

The rule laid down in *United States v. Wade, supra* is not applicable to the present case since *Wade* has not been given retroactive application. *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199. *Wade* was decided on June 12, 1967, and the defendant was brought to trial in February 1967. Therefore, any question relating to the conduct of the confrontation must be decided under the due process of law test articulated by the Supreme Court in *Stovall v. Denno, supra,* which has been given retroactive application. *Foster v. California,* 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402; *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247.

The test set forth by the Supreme Court in *Stovall v. Denno, supra* whereby an out-of-court identification of the defendant is measured against due process of law is to ask whether the confrontation was so unnecessarily suggestive and conducive to irreparable mistaken identification that the defendant was denied due process of law. The answer to this question depends on the totality of the circumstances surrounding the confrontation.

In the opinion of this court, the police procedures

which led to the identification of the defendant by the complaining witness were not so unnecessarily suggestive and conducive to irreparable mistaken identification that the defendant was denied due process of law. It was first established that the complaining witness got a good look at the man who held him up in broad daylight. The police showed the witness numerous pictures of negro males, and the witness selected the defendant's picture from all of the others even though the picture he saw did not reveal a scar which the defendant has on one side of his face. The circumstances surrounding this identification are similar to those in *Simmons v. United States, supra* where the Supreme Court held that a photo identification of the defendant was not a denial of due process of law.

After the identification of the defendant's photograph, the witness was taken to view the defendant in Denver General Hospital. The witness and the police officer both testified that while the first view of the defendant did not reveal the scar on defendant's cheek, the witness stated this was the man and that a close examination would reveal such a scar.

Under the circumstances of this case we cannot find that as a matter of law the procedures followed were so necessarily suggestive as to deny due process of law.

### III.

The defendant alleges that it was error for the trial judge to admit into evidence certain parts of a statement made by the defendant to a police officer. The defendant argues that the record does not contain sufficient evidence that the defendant made a knowing and intelligent waiver of his rights to remain silent and to be represented by counsel as set forth in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

In this case, the defendant was granted a full hearing on the question of the admissibility of his statement in accordance with *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908. The evidence given at the hearing was conflicting. However, there was sufficient evidence

presented by the People that the defendant had been adequately advised of his privilege against self-incrimination and his right to retained or appointed counsel, and that the defendant had made an uncoerced and voluntary waiver of this right before making his statement, that the finding by the trial judge that the statement was admissible into evidence is adequately supported. See *Neitz v. People,* 170 Colo. 428, 462 P.2d 498.

### IV.

 The defendant bases his argument that the trial court was in error in denying his motion for acquittal at the close of the case for the prosecution on three grounds.

First, the defendant contends that there was no competent in-court identification of the defendant as the man who perpetrated the robbery. This argument is partly predicated on defendant's theory that any identification of the defendant which was tainted by the allegedly improper confrontation at the hospital should have been suppressed. We have found that the confrontation was not improperly conducted under the circumstances of this case, and the testimony regarding the identification of the defendant at Denver General Hospital was properly admitted. The testimony given by the victim of the robbery indicates that he identified the defendant in court as being the man for whom he bought drinks, the man who robbed him of his money, and the man who he subsequently identified at Denver General Hospital. Such identification was more than sufficient.

Second, the defendant argues that there was no proof put on by the prosecution that the crime was committed in the City and County of Denver, and, therefore, the People failed to prove that the Denver District Court had the proper venue. Somehow in making this argument the defendant has overlooked the testimony by the victim that the place where the robbery occurred was on Arapahoe Street in Denver, Colorado. We find no merit in his contention.

Third, the defendant argues that the People failed to meet their burden of proof concerning the material allegations of the crime of aggravated robbery. Defendant notes that no gun was ever found by police officers, and alleges there was insufficient evidence that the defendant had the intent, if resisted, to maim, wound, or kill his victim. However, the victim identified the defendant as the man who took money from him at gunpoint. He testified that the defendant ordered him to hand over his money and not give the defendant any lip or he would blow his brains out. While no gun was found in the possession of the defendant, the evidence was sufficient to create a prima facie case of aggravated robbery. *McGraw v. People,* 154 Colo. 368, 390 P.2d 819.

## V.

The defendant argues that it was error for the court to omit an instruction on simple robbery when charging the jury. We do not agree. The rule in Colorado is that the trial judge must give an instruction on simple robbery in a case in which the defendant is charged with aggravated robbery only when such instruction is requested by the defendant and is in some manner an issue in the case. *Hollon v. People,* 170 Colo. 432, 462 P.2d 490.

In the present case, counsel for the defendant did not request an instruction on simple robbery. Instead, it is clear from the comments of defense counsel concerning the interrogatory received from the jury that the defendant was relying on either a conviction of aggravated robbery or acquittal. This court has often said it will not permit second guessing in matters of trial strategy. Under these circumstances, it was not error for the trial court to omit an instruction on simple robbery.

## VI.

After the jury had commenced its deliberations, it directed the following inquiry to the court:
"Can the defendant be found guilty of aggravated robbery if the existence of a gun is doubted?"

After deliberation with counsel for both sides, the court responded in writing:

"I am sorry that I cannot answer your question directly, but the answer is contained in the instructions that you now have.

"Again I must state that no single one of these instructions states all the law applicable to the case, but all of these instructions must be taken, read, and considered together, as they are connected with and related to each other as a whole.

"As for the gun, this is one of the material allegations of the crime charged against the defendant."

The defendant contends that it was error that the judge did not give a more direct reply to the jury's inquiry. We find that there is no error in the answer which the judge did give to the jury, and that there was no prejudice to the defendant. Defense counsel was present at the time the court prepared the response. The response of the judge to the jury was in writing. Instead of emphasizing only one aspect of the instructions as suggested by the defendant, the judge reemphasized that the jury must read and consider all of the instructions given by the court in reaching their verdict. The response does not incorrectly state the applicable law, and it is not in any way prejudicial to the defendant. Under these circumstances we find no error in the response submitted by the judge. See *Nieto v. People*, 160 Colo. 179, 415 P.2d 531.

 The defendant's argument that the verdict of the jury indicates that they did not follow the instructions of the trial court is an argument relating to the weight of the evidence. We have already decided that the evidence was sufficient to present a prima facie case of aggravated robbery committed by the defendant and is sufficient to support the jury verdict.

## VII.

 In his brief, the defendant alleges five other causes for error. These arguments were not contained in the defendant's motion for a new trial and will not be

considered by this court on appeal. Colo. R. Crim. P. 37(b); *Falgout v. People,* 170 Colo. 32, 459 P.2d 572. We have examined the arguments and find no evidence of plain error or defects affecting substantial rights that would justify notice by this court on its own motion.

The judgment is affirmed.