MR. JUSTICE GROVES
delivered the opinion of the Court.
The defendant Olguin and a co-defendant are charged with theft of a typewriter and an intercom telephone and conspiracy to commit the theft. This is an interlocutory appeal from an order granting a motion to suppress statements made by the defendant Roseanne Olguin. We reverse.
At the suppression hearing, the testimony reflected that on January 13, 1974 at approximately 3:30 in the morning, two security guards at Denver General Hospital observed the defendants leaving the front entrance with a large object covered with a coat. The guards confronted them and asked them to reveal what was under the coat. The defendant carrying the object said, “What?” and did not remove the coat. The guard testified that he could see part of a typewriter under the coat and that he then *36 asked his partner to stay with them while he went to call the police.
One guard went into the hospital, called the sheriff and the police. Before the police arrived, the deputy sheriff then on duty at the hospital responded to the call and found the two suspects seated on a planter in front of the hospital, and being watched by the guard. The security guard showed the sheriff the typewriter which was not covered, and was placed behind the planter on which the defendants were seated. The sheriff asked the defendants to accompany them into the hospital.
In the sheriffs office in the hospital, the defendants were advised of their rights twice, once by a police officer, and once by the police officer who responded to the security guard’s call. The defendant Olguin made an oral statement at that time. Later that morning, at the police station, the defendant Olguin was again advised of her rights, and questioned. She made no statement at that time. The following morning, January 14, she was taken before a judge who again advised her of her rights. Upon her return to the police station, once again she was advised and questioned. Miss Olguin then gave an oral, and shortly thereafter, a written statement.
The People seek to use the oral statement given at the hospital, and the statements given at the police station in evidence at the trial of the defendants. The trial court at the hearing on defendants’ motion to suppress ruled that the security guards did not make an arrest; that the sheriffs did make an arrest but without the requisite authority to do so, (see International Brotherhood of Police Officers v. City and County of Denver, 185 Colo. 50, 521 P.2d 916 (1974)); that the crime was not committed in the deputy sheriffs’ presence; and that the police officers rearrested the defendants. The court then ordered the statements suppressed.
The defendants argue that the deputy sheriffs made an illegal arrest., and that the fruit of the illegal arrest must be suppressed. We cannot agree. When the defendants were stopped by the security guards, who were in uniform, carrying weapons, and wearing badges, their freedom to leave was immediately and sharply curtailed. One armed guard stayed to watch the defendants when the other said he was going to get the police. It is immaterial in this case that the guards did not announce that they *37 were arresting the defendants or that later the police officers stated that they arrested them. In Schindelar v. Michaud, 411 F.2d 80 (10th Cir. 1969) cert. denied, 396 U.S. 956, 90 S.Ct. 426, 24 L.Ed.2d 420 the court said, “a person must be advised that he is being arrested and the reason therefore unless that person either knows or has reason to know that he is being arrested and why.”
In this case, the guards intended that the defendants remain, and the defendants had every reason to believe that they were not free to go upon their way. The arrest at this point was complete. See Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); United States v. Viale, 312 F.2d 595 (2nd Cir. 1963).
The security guards, like any other citizens, have the power to make a citizen’s arrest pursuant to Colo. Sess. Laws 1972, ch. 44, 39-3-201, which reads:
“A person who is not a peace officer may arrest another person when any crime has been or is being committed by the arrested person in the presence of the person making the arrest.”
The “in presence” requirement is met if the arrestor observes acts which are in themselves sufficiently indicative of a crime- in the course of commission. United States v. Viale, supra. Certainly the security guards acted reasonably in holding the suspects. They were within their authority as private citizens in making the arrest.
We do not reach the issue argued by the parties of whether the “in presence” requirement of the statute was met as to the deputy sheriffs, or whether, if the arrest were illegal, the numerous advisements of the defendant purged any taint as to the later statements.
The defendants argue further that the statements were not voluntary. We do not rule upon this issue as the trial court specifically withheld a ruling on voluntariness. Until the trial court rules, upon the basis of evidence before it, the issue is not properly before this court.
We reverse the ruling.
MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE ERICKSON concur in the result.