576 P.2d 179 (1978)
The PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
Daniel Garfield TRUJILLO, Defendant-Appellant.
No. 76-542.
Colorado Court of Appeals, Div. III.
November 3, 1977.
Rehearing Denied December 1, 1977.
Certiorari Denied March 20, 1978.
*180 J. D. MacFarlane, Atty. Gen., Jean E. Dubofsky, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., Jeffrey G. Pearson, Asst. Atty. Gen., Denver, for plaintiff-appellee.
Rollie R. Rogers, Colorado State Public Defender, James F. Dumas, Jr., Chief Deputy State Public Defender, Nancy E. Rice, Deputy State Public Defender, Denver, for defendant-appellant.
PIERCE, Judge.
Defendant, Daniel G. Trujillo, was convicted by a jury on one count of theft and one count of first degree burglary. He appeals and we affirm.
In August of 1975, Camillo Suntken was staying at her parents' home while they were away. On August 7 she and her then fiance, Dale Suntken, were returning to the house when they noticed that it had been broken into. They heard a door slam. Dale ran through the house and gave chase to a man who had left through another door. After being pursued through the neighborhood a short distance, the man stopped, turned around, pointed a gun at Dale and told him to stop. Dale turned back and the man fled. Both Camillo, who observed the chase from the front door, and Dale gave the police a description of the man, which included reference to a small silver gun the man was holding and a pair of black gloves he was wearing. Descriptions were also given by other witnesses to the chase, one of whom recorded the license number of the car in which the man left the scene.
On the basis of this information, defendant was arrested at his home that same evening.

I.
Defendant's car, which was parked in the driveway at the time of the arrest, was impounded and taken to police headquarters. On August 9 defendant signed a form indicating that he consented to a search of the car. The police immediately searched the vehicle, but all that was recovered was a necklace which, it was later determined, was unconnected to the robbery. The suspicions of the police were aroused, however, after defendant's wife repeatedly insisted that the car be returned, and on August 11 they searched the car more thoroughly. *181 This second search produced several items later identified as having been taken during the burglary, as well as a black glove and a small caliber chrome colored pistol, all of which were introduced into evidence.
Defendant maintains that these items should have been suppressed as fruits of an illegal search. He argues that the consent he gave on August 9 was involuntarily given, and that even if it was voluntary, it supported only the August 9 search and not the August 11 search.

A.
Defendant testified that he was under the influence of drugs when he signed the consent to search form, even though he had been incarcerated for two days, and that his consent was therefore not "intelligent and voluntary" as required by People v. Hancock, 186 Colo. 30, 525 P.2d 435 (1974) and Phillips v. People, 170 Colo. 520, 462 P.2d 594 (1969). There was considerable conflicting testimony presented on this issue.
We are aware that the People have the burden of proving the voluntariness of the consent by clear and convincing evidence. People v. Hancock, supra. However, the question of voluntariness is to be answered in light of all of the surrounding circumstances, and is a question left to the discretion of the trial court. Capps v. People, 162 Colo. 323, 426 P.2d 189 (1967). Since the trial court's finding of voluntariness here is supported by adequate evidence, that finding must be upheld on review. People v. Pearson, Colo., 546 P.2d 1259 (1976).

B.
Defendant's contention that the August 9 consent did not encompass the August 11 search raises an issue of first impression in Colorado. We hold that the question of the temporal scope of a consent to search is also a question of fact to be determined in light of all of the circumstances, and therefore reject his argument.
Defendant knew that the police had impounded his car when he consented to the search on August 9. Since that consent was not limited to a particular time, and since the defendant should have foreseen that the car would remain impounded for a reasonable length of time, we agree with the trial court that the later search was supported by the initial consent. See People v. Nawrocki, 6 Mich.App. 46, 150 N.W.2d 516 (1967), cert. denied, 389 U.S. 942, 88 S.Ct. 304, 19 L.Ed.2d 296 (1967).

II.
Defendant also argues that Dale Suntken's in-court identification was tainted by two overly suggestive pretrial identifications. Again, we disagree.

A.
Shortly after the incident, detectives showed Dale three photographs. He immediately picked defendant's picture out of this photographic array. Defendant argues that the small number of sample photographs renders the photographic display "unduly suggestive" under the doctrine of Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), as adopted by our Supreme Court in Phillips v. People, supra. Here, however, there is no evidence indicating that Dale was at all unsure of his identification, or that his choice would have been different if five or 50 samples were shown. Nor is there evidence that the interviewing detective influenced the outcome in any way. Under these circumstances, the trial court did not abuse its discretion in finding that the photographic display was not unduly suggestive. See Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); People v. Pickett, Colo., 571 P.2d 1078 (announced October 24, 1977); People v. Knapp, 180 Colo. 280, 505 P.2d 7 (1973); Bravo v. People, 171 Colo. 418, 467 P.2d 814 (1970).
Defendant also claims error because the three photographs used in Dale's photographic identification were unavailable at trial. Since the in-court identification was based on the excellent opportunity Dale had to observe defendant during the chase, and *182 since defendant does not contend that the missing photographs themselves would have been of assistance in presenting his defense, the defendant was not prejudiced by the absence of the photographs, and the incourt identification testimony was therefore admissible. People v. Hauschel, Colo.App., 550 P.2d 876 (1975).

B.
Shortly after the photographic display, Dale was taken to a room in which defendant was the only occupant, and he again identified defendant as the man he had earlier pursued from the house. While it is true that such "one man show-ups" are not favored since they tend to be suggestive, they do not per se violate due process. People v. Williams, 183 Colo. 241, 516 P.2d 114 (1973). In each case, the determinative question is the likelihood of misidentification. Manson v. Brathwaite, supra. Here, the circumstances surrounding the chase, the prior photographic identification, and the fact that both the photographic display and the show-up were conducted only a few hours after the incident, all substantiate the trial court's ruling. See Manson v. Brathwaite, supra; People v. Williams, supra.

III.
Defendant's last argument is that the trial court erred in refusing to grant a continuance he requested on April 27, 1975. Once again, we disagree.
The defendant's April 27 motion for a continuance was the fifth in a series of motions which postponed the trial by more than two months. Three of these continuances were granted over the objection of the District Attorney. Defendant's requests for additional time were principally directed at providing him with an opportunity to locate certain witnesses who could help him establish an alibi. He did not know the witnesses' names or whereabouts.
Whether a motion for continuance should be granted is a matter within the sound discretion of the trial court. People v. Holcomb, 187 Colo. 371, 532 P.2d 45 (1975); Miller v. People, 178 Colo. 397, 497 P.2d 992 (1972). The trial court here, both before and during the trial, demonstrated a great deal of sensitivity to defendant's predicament, and gave him ample opportunity to discover the existence of any additional defense witnesses. Under these circumstances, we see no indication that the trial court abused its discretion in denying the motion for a continuance.
Judgment affirmed.
RULAND and Van CISE, JJ., concur.