*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  December 10, 2015               105985
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                    Respondent,
        v                                    MEMORANDUM AND ORDER

FREDERICK A. FAGAN,
                    Appellant.
_____


Calendar Date:  October 22, 2015

Before:  Peters, P.J., Garry, Rose and Clark, JJ.

                    _____


        Robert A. Gouldin, Oneonta, for appellant.

        Weeden A. Wetmore, District Attorney, Elmira (John R.
Thweatt of counsel), for respondent.

                    _____


Garry, J.

        Appeal from a judgment of the County Court of Chemung
County (Hayden, J.), rendered March 18, 2013, convicting
defendant upon his plea of guilty of the crime of criminal
possession of a controlled substance in the fourth degree.

        In May 2012, a police investigator executing an
eavesdropping warrant intercepted a phone call placed by
defendant to a narcotics trafficking suspect.  Defendant and the
trafficking suspect engaged in what the investigator understood
to be a coded conversation in which the two agreed to meet at a
barbershop in the City of Elmira, Chemung County so that
defendant could purchase narcotics from the trafficking suspect.
The investigator relayed this information to an undercover
officer, who in turn observed the two men leave the barbershop

together in defendant's car, briefly stop at the trafficking suspect's home and then return to the barbershop, where defendant dropped off the trafficking suspect. As defendant drove away, the investigator contacted a patrol officer and advised that defendant was suspected of being in possession of narcotics. The patrol officer followed defendant's vehicle and, upon observing that the vehicle had inoperable brake lights (see Vehicle and Traffic Law § 375 [40] [b]), initiated a traffic stop. Meanwhile, the investigator intercepted another phone call from the trafficking suspect to defendant in which defendant stated that he was being followed by the police and the trafficking suspect responded by advising defendant to "put it up, put it up." After activating his emergency lights, the officer observed that defendant "leaned over on his left leg . . . like he was lifting the right side of his body off the ground and his right arm . . . appeared to be going behind his back or under his body." Defendant thereafter pulled his vehicle to the side of the road. Defendant admitted to the officer that his driving privileges were suspended, and he was placed under arrest.

The officer permitted defendant to contact his girlfriend so that she could retrieve the vehicle. Upon her failure to arrive, the officer obtained defendant's consent to move the vehicle and to secure any valuable items that may be inside. While doing so, the officer observed a pair of rubber gloves and an empty plastic baggie inside the vehicle. Defendant was then transported to the police station, where the officer conducted a strip search. Defendant removed his clothing but, according to the officer, refused to fully comply when he was asked to bend over so as to permit a visual inspection of his anal cavity. Defendant was then allowed to put some of his clothing back on while the officer summoned a lieutenant. The lieutenant engaged in a discussion with defendant; thereafter, defendant reached into his underwear and surrendered two plastic baggies containing cocaine to the police.

Following these events, defendant was charged in an indictment with criminal possession of a controlled substance in the fourth degree stemming from the foregoing events. Defendant moved to suppress the cocaine and, following a Mapp hearing, County Court denied the motion. Defendant then pleaded guilty to

the crime as charged and was sentenced, as a second felony drug offender, to a prison term of four years followed by two years of postrelease supervision.  Defendant appeals.

Defendant argues that County Court erred in denying his motion to suppress the cocaine as it was recovered as the product of an unconstitutional search, and, further, that his acquiescence in surrendering the drugs to police was rendered involuntary by police coercion and overbearing.  We disagree.  In determining whether reasonable suspicion exists to conduct a strip search or visual body cavity search, police are permitted "to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person" (People v Hall, 10 NY3d 303, 311 [2008] [internal quotation marks and citation omitted], cert denied 555 US 938 [2008]; accord People v Cogdell, 126 AD3d 1136, 1138 [2015], lv denied 25 NY3d 1200 [2015]).  At the suppression hearing, the patrol officer testified that his decision to conduct the strip search was based upon the information that he had received from the investigator regarding defendant's activities prior to the arrest, defendant's record of narcotics arrests, his own observations of defendant appearing to reach underneath his body, and the subsequent discovery of an empty plastic baggie and rubber gloves in defendant's vehicle – items he knew to be associated with drug trafficking and the concealment of drugs in a body cavity.  County Court's credibility determinations are entitled to great weight in view of its superior position to observe the testimony (see People v Prochilo, 41 NY2d 759, 761 [1977]; People v Hurd, 279 AD2d 892, 895 [2001]), and we find no error in its finding that the strip search was sufficiently justified by the requisite "specific, articulable factual basis supporting a reasonable suspicion to believe [that defendant had] secreted evidence inside a body cavity" (People v Hall, 10 NY3d at 311; see People v Cogdell, 126 AD3d at 1138-1139; People v Hunter, 73 AD3d 1279, 1280 [2010]).

The lieutenant testified regarding his discussion with the defendant that ultimately led to defendant's relinquishment of the cocaine.  In essence, he described that he advised that the next step the police would take, if defendant did not cooperate,

would be to apply for a search warrant. This explanation did not rise to coercion (see People v Yuruckso, 297 AD2d 299, 299-300 [2002]), nor does the record reveal that deception or trickery was employed that "was so fundamentally unfair as to deny due process" (People v Tarsia, 50 NY2d 1, 13 [1980]; accord People v Wolfe, 103 AD3d 1031, 1035 [2013] [internal quotation marks and citation omitted], lv denied 21 NY3d 1021 [2013]). Notably, the record supports County Court's finding that the promises made by the police in an attempt to induce defendant to cooperate — including that he would be released that evening — were kept. Accordingly, we find that defendant's decision to surrender the cocaine to the police was not precipitated by unlawful police conduct or coercion, and County Court correctly denied defendant's motion to suppress.

Finally, we reject defendant's contention that his sentence was harsh and excessive. At sentencing, defendant's counsel argued for a prison term of four years, which was the term ultimately imposed by County Court. We further note that, as a second felony drug offender, defendant faced a potential maximum sentence of eight years (see Penal Law §§ 70.45 [2] [d]; 70.70 [3] [b] [ii]), and, in view of his criminal history, we discern no extraordinary circumstances warranting a modification of the sentence in the interest of justice (see People v Tetreault, 131 AD3d 1327, 1328 [2015]; People v Charles, 258 AD2d 740, 740-741 [1999], lv denied 93 NY2d 968 [1999]).

Peters, P.J., Rose and Clark, JJ., concur.

ORDERED that the judgment is affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court